# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-4206

DEXTER AXLE COMPANY,

Plaintiff-Appellant,

v.

INTERNATIONAL ASSOCIATION OF
MACHINISTS & AEROSPACE WORKERS,
DISTRICT 90, LODGE 1315,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 03 C 906—**Allen Sharp**, *Judge*.

_____

ARGUED JUNE 3, 2005—DECIDED AUGUST 15, 2005

_____

Before CUDAHY, POSNER, and WILLIAMS, *Circuit Judges*.

CUDAHY, *Circuit Judge*. This action to vacate an arbitration award was brought by the Dexter Axle Company (Dexter), against the International Association of Machinists and Aerospace Workers, District 90, Lodge 1315 (Union) under the Labor and Management Relations Act of 1947, 29 U.S.C. § 185. A collective bargaining agreement (CBA) between Dexter and the Union provided that Dexter's employees would receive incentive pay for completing assembly tasks more quickly than at a benchmark production

rate called a "standard". The CBA also allowed Dexter to periodically recalculate incentive standards in the event there was a significant change in method, tooling or other conditions and set forth procedures for challenging these recalculations. Dexter having recalculated inventive standards in 2000 and having implemented new standards in 2001, certain union members contested the standard for the 12-inch axle station. After exhausting internal procedures, the dispute was submitted to arbitration, with the arbitrator finding the contested standard improper and awarding lost wages to affected employees. Dexter then challenged the award in district court and, the parties having filed cross-motions for summary judgment, the district court granted summary judgment for the Union. On appeal, Dexter now asserts that the arbitrator exceeded his authority in awarding lost wages and that compliance with the award would result in Dexter's violation of the CBA. We affirm.

## I.

Dexter is a manufacturer of trailer axles, and the Union is the authorized bargaining representative for all production and maintenance workers at Dexter's Elkhart, Indiana manufacturing facility (Elkhart). Dexter and the Union were parties to a CBA, whose term ran from July 23, 1999 to July 22, 2002. The CBA consists of sixteen articles, with Article XV providing for a basic hourly rate and outlining an incentive pay system for Elkhart employees. The terms of the incentive pay system are set forth in the sixteen sections of the Incentive Pay System Supplement (Supplement), which, *inter alia*, establish procedures for setting and challenging incentive standards. The Supplement is a separate document from the sixteen articles of the CBA, but is made part of the CBA by the express language of Article XV.

In Article VII, "Grievance Procedures," and Article VIII, "Arbitration," the CBA also establishes procedures for resolving disputes about its provisions. The Supplement outlines in Sections 10, 11 and 12 additional procedures for employees to contest incentive standards. Sections 11 and 12 of the Supplement specifically refer to Articles VII and VIII of the CBA, respectively, with Section 12, stating in its entirety:

> Section 12. If no agreement is reached at Step Three, the disputed standard may be submitted to arbitration under the provisions of Article VIII, except that the Arbitrator selected shall be a competent engineer in the field of work measurement or one who is experienced in arbitrating incentive grievances. The Arbitrator shall have no power to set a standard and/or rate, or to establish methods or procedures. His authority shall be limited to reviewing whether the standard is proper and consistent with those established in the plant and has been properly applied.

In November of 1999, Dexter assigned an industrial engineer (Engineer) to study and establish new incentive standards for Elkhart's axle assembly processes. The Supplement provides details about how the Engineer is expected to set standards on which to calculate incentive pay. The Engineer concluded his study in January of 2000, and Dexter implemented the Engineer's newly established standards in September of 2001. In November of 2001, several Elkhart employees filed complaints with Dexter protesting the newly calculated rates in accordance with the procedures outlined in the Supplement. The Union and Dexter could not resolve the matter; so it was submitted to arbitration. The arbitrator issued an Interim Award in June of 2003, and, before he issued his Final Award in September, permitted the Engineer to respond to the Interim Award. After reviewing the Engineer's response, the arbitrator concluded in his Final Award that the line

balancing method used by the Engineer on the 12-inch axle line resulted in an improper standard. The arbitrator expressly defined the limits of his authority in making this Final Award as stemming from Article VIII of the CBA and section 12 of the Supplement. The arbitrator then awarded affected employees lost wages resulting from the implementation of the new, improper standard.

Thereafter, pursuant to the Labor and Management Relations Act of 1947, 29 U.S.C. § 185, Dexter filed a complaint in December of 2003 against the Union and moved to vacate the arbitrator's award. After the parties filed cross-motions for summary judgment, the district court granted the Union's motion in November of 2004. In its Memorandum and Order, the district court acknowledged that Dexter had made a "clever technical" argument to undermine the award, but stated that this was not enough under a collective bargaining agreement to disturb an arbitrator's award, citing *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593 (1960). Dexter then initiated this appeal in December of 2004.

## II.

A district court's grant of summary judgment is reviewed *de novo*, applying the same standards as did the district court to evaluate the arbitrator's decision. *N. Ind. Pub. Serv. Co. v. United Steel Workers of Am., Local Union 2775*, 243 F.3d 345, 346 (7th Cir. 2001). Judicial review of arbitration awards under collective bargaining agreements is extremely limited. *Id.*

Dexter presents two arguments to support its contention that the arbitrator's award should be vacated. Dexter first alleges that the arbitrator exceeded his authority by awarding lost wages. Second, Dexter argues that compliance with the arbitrator's award would force Dexter to violate the CBA. We address each of these arguments in turn.

A.  Whether the Arbitrator Exceeded His Authority Under
    the CBA By Awarding Lost Wages

Dexter asserts that the arbitrator had no authority to award lost wages since this remedy is not available in the arbitration of an incentive rate dispute. Thus, the argument is that the arbitrator disregarded the plain language of Section 12 of the Supplement, which limits the arbitrator's authority to "reviewing whether the standard is proper and consistent," without elaboration, and makes no mention of lost wages. Dexter cites numerous cases holding that arbitrators are without authority to disregard the plain language of a contract. *See Polk Bros., Inc. v. Chi. Truck Drivers, Helpers, & Warehouse Workers Union*, 973 F.2d 593, 597-98 (7th Cir. 1992); *District No. 72 & Local Lodge 1127, Int'l Assoc. of Machinists & Aerospace Workers v. Teter Tool & Die, Inc.*, 630 F. Supp. 732, 735 (N.D. Ind. 1986); *Durabond Products, Inc. v. United Steelworkers of Am.*, 421 F. Supp. 76, 79 (N.D. Ill. 1976)

Dexter also relies on Indiana common law and the principle of *expressio unius est exclusio alterius* to demonstrate that the parties intended that incentive pay arbitrations contemplate no lost wages remedy.[1] Indiana common

---

[1]  In a footnote to its appellate brief, the Union notes that Dexter relied on Indiana contract law to interpret the CBA and states that, under *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964), the construction of collective bargaining agreements subject to 29 U.S.C. § 185 is a matter of federal common law. In reply, Dexter asserts that courts commonly use contract interpretation tools when construing collective bargaining agreements. *See id.*, *R.L. Coolsaet Constr. Co. v. Local 150, Int'l Union of Operating Eng'rs*, 177 F.3d 648 (7th Cir. 1999) Under *John Wiley & Sons* "[f]ederal law, fashioned from the policy of our national labor laws, controls" suits brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. 376 U.S. at 548 (citing

(continued...)

law provides that when a contract contains general and specific provisions relating to the same subject, the specific provision controls. *See Bowling v. Poole*, 756 N.E.2d 983, 990 (Ind. Ct. App. 2001); *Eskew v. Cronett*, 744 N.E.2d 954, 957 (Ind. Ct. App. 2001). Thus, Dexter contends that the dispute resolution procedures contained in CBA Articles VII (Grievance Procedure) and VIII (Arbitration) are super-seded by the Supplement. Under Indiana law, the Supplement, which is specifically applicable to the incentive program, controls over the general provisions of the CBA.

---

(...continued)

*Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456-57 (1957)). In contrast, "[s]tate law may be utilized so far as it is of aid in the development of correct principles or their application in a particular case, but the law which ultimately results is federal." *Id.* at 548 (internal citation omitted). We have followed this course, having held that "while the arbitrability of a dispute is ordinarily regulated by state law, collective bargaining agreements are interpreted under federal law " though "we may draw guidance from state law principles if they are compatible with federal labor law policies." *Int'l Brotherhood of Electrical Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 405 (7th Cir. 2002); *see also Merk v. Jewel Food Stores Div. of Jewel Cos., Inc.*, 945 F.2d 889, 892 (7th Cir. 1991) ("Ordinary common law contract principles, therefore, cannot simply be imported whole into the labor context and mechanistically applied to collective bargaining agreements. To foster industrial peace and stability, we must instead read collective bargaining agreements with sensitivity to considerations of national labor policy."); WILLISTON ON CONTRACTS § 55:15 (Richard A. Lord ed., 4th ed. 2004) ("[T]he rule that a labor collective bargaining contract is to be construed according to federal rather than state law does not make state law principles completely inapplicable, since the role of a court in interpreting a contract is to ascertain what the parties meant by the words they used; thus, traditional rules of contract interpretation apply when they are not inconsistent with federal labor law.").

Dexter also argues that, under the maxim *expressio unius est exclusio alterius* (expressly including some matters in a contract implies the exclusion of others), *see R.L. Coolsaet Construction Co. v. Local 150, International Union of Operating Engineers*, 177 F.3d 648, 658 (7th Cir. 1999), Section 12 of the Supplement expressly references CBA Article VIII (arbitration) detailing the submission of an incentive rate dispute, but does not expressly refer to its *remedies*, including lost wages, indicating that the parties did not intend Article VIII remedies to be available. Dexter further argues that the parties knew how to provide for remedies (such as lost wages) since CBA Article VIII specifically addresses remedies, and that the omission of such remedies from Section 12 of the Supplement evidences a deliberate decision to omit authority for awarding lost wages.

The Union, on the other hand, insists that lost wages are available as a remedy. The Union contends that, since § 7.5 of CBA Article VII[2] is incorporated by reference in Section 11 of the Supplement,[3] the parties specifically agreed that disputes over incentive rate standards contemplate remuneration as a possible remedy. The Union then asserts that Dexter's interpretation of the last two sentences in Section 12 (construed as limiting the arbitrator's authority) is an "unnatural reading" since it assumes that the second sentence constitutes a wholesale limitation on the arbitra-

---

[2] Section 7.5 of CBA Article VII, titled "Grievance Procedure," anticipates monetary awards, such as back pay relief, stating that "[w]here remuneration is involved, such remuneration shall be effective as decided in the grievance procedure."

[3] Section 11 of the Supplement provides that an unresolved dispute concerning a standard will proceed "as a grievance at Step Two of the Grievance Procedure of Article VII" and then states that "[s]ettlement of any grievance shall be in accordance with Section 7.5 . . . .".

tor's activities with respect to incentive rate standards. In contrast, the Union suggests that the second sentence (stating that "[the arbitrator's] authority shall be limited to reviewing whether the standard is proper and consistent . . . .") merely modifies the prior sentence (stating that "the [a]rbitrator shall have no power to set a standard . . . or to establish methods or procedures."). According to the Union, this also explains why Section 11 of the Supplement states that "[s]ettlement of any grievance shall be in accordance with" § 7.5 of CBA Article VII. This argument prompts Dexter to respond that the Union had to rewrite the last two sentences of Section 12 to support its argument, and again assert that Section 12 excludes a lost wage remedy. At this point, the Union concludes that, in making his Final Award, the arbitrator confined himself to construing the CBA, *see, e.g., Ethyl Corp. v. Local 7441, United Steel Workers of Am.*, 768 F.2d 180, 184 (7th Cir. 1985) (arbitrator's award based on his or her interpretation of the contract draws its essence from the contract). In any event, the Union asserts, § 8.2 of CBA Article VIII[4] is broad

---

[4] Section 8.2 of CBA Article VIII, titled "Authority of the Arbitrator," states in pertinent part:

> The Arbitrator may consider and decide only the particular grievance presented to him in the written stipulation of the Company and the Union, and his decision shall be based solely upon his interpretation of the provisions of this Agreement. The Arbitrator shall not have the right to amend, modify, remove, add to or disregard any of the provisions of this agreement, nor shall he have the power to establish or change any basic wage rate or rate range; nor shall he have the power to change any discipline imposed by the Company unless, upon the facts of the case presented before him, he finds the Company has violated the terms of this Agreement.

> In cases of grievance involving the loss of time or money, the Parties may agree to, or the Arbitrator may order,
> (continued...)

enough to authorize the arbitrator to award lost wages. *See Sullivan v. Lemmoncello*, 36 F.3d 676, 683 (7th Cir. 1994) (upholding arbitration board's assessment of fines and penalties as drawing its essence from the collective bargaining agreement); *Ind. Employee's Union of Hillshire Farm Co., Inc. v. Hillshire Farm Co., Inc.*, 826 F.2d 530, 533-34 (7th Cir. 1987) (upholding arbitrator's award because it was "plausible to suppose that the remedy . . . was within the contemplation of the parties and hence implicitly authorized by the agreement"). Finally, the Union argues that without the remedy of lost wages grievances about standards would be exercises in futility.

It seems clear to us that Dexter cannot shoulder the heavy burden involved in setting aside the arbitrator's Final Award. Controlling precedent both from the Supreme Court and from this circuit establishes the criteria under which we review an arbitrator's ruling. The Supreme Court has adopted the classic formulation that an arbitrator's award is legitimate "so long as it draws its essence from the collective bargaining agreement." *United Steel Workers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). A court will vacate an award only "when the arbitrator's words manifest an infidelity to this obligation." *Id.* This circuit has termed the *Enterprise Wheel* rule a test of "whether the arbitrator had exceeded the powers delegated to him by the parties." *Ethyl Corp.*, 768 F.2d at 184; *see also N. Ind. Public Serv. Co.*, 243 F.3d at 347 (courts "are empowered to vacate an award only if the arbitrator exceeded his or her authority").

It is abundantly clear that it is the arbitrator who is behind the driver's wheel of interpretation, not the court.

---

[4] (...continued)
> reinstatement and/or back pay but in no event shall back pay be awarded for any period of time prior to the date the grievance was verbally submitted to the Grievance Procedure.

Great deference is paid to an arbitrator's construction and interpretation of an agreement. It is elementary that the "question of interpretation of the collective bargaining agreement is a question for the arbitrator." *Enterprise Wheel*, 363 U.S. at 599. "It is the arbitrator's construction which was bargained for . . . [and] the courts have no business overruling him because their interpretation of the contract is different . . . . " *Id.* "[I]t is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference) that the award can be said not to draw its essence from the [CBA]." *N. Ind. Pub. Serv. Co.*, 243 F.3d at 347 (internal quotation omitted). "Thus, we will vacate only if there is no possible interpretive route to the award." *Id.* Significantly, "[w]e resolve any reasonable doubt about whether an award draws its essence from the [CBA] in favor of enforcing the award." *Id.*

Here, the arbitrator developed his own interpretation of the CBA. In his Final Award, the arbitrator stated, "The provisions of Section 12 of the Incentive Pay System Supplement *and* Section 8.2 of the Agreement limit my authority." (emphasis added). Because this construction is the arbitrator's own, it must be an acceptable construction under *Enterprise Wheel*. Further, following *Enterprise Wheel*, both Dexter and the Union have bargained for the arbitrator's interpretation, and section 8.2 of Article VIII explicitly allows the arbitrator to award back pay. Because the arbitrator ruled that section 12 of the Supplement and § 8.2 of CBA Article VIII limited his authority, he acted within the scope of his authority in awarding lost wages.

In addition, *Enterprise Wheel* emphasizes another point crucial to the resolution of this dispute: an arbitrator needs

flexibility when formulating remedies.[5] *Id.* at 597; *see also Local 879, Allied Indus. Workers of Am. v. Chrysler Marine Corp.*, 819 F.2d 786, 789 (7th Cir. 1987) (quoting *Enterprise Wheel*). A court "must consider whether it is at all plausible to suppose that the remedy [the arbitrator] devised was within the contemplation of the parties and hence implicitly authorized by the agreement." *Chrysler Marine Corp.*, 819 F.2d at 789 (quoting *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1163 (7th Cir. 1984)). The arbitrator's authority to interpret and find a breach of the agreement implies the authority to prescribe a remedy to cure the breach.[6] *Id.* at 789-90. Dexter does not dispute the merits of the arbitrator's award; it makes no argument that the incentive standards on the 12-inch axle line were correct or that the arbitrator wrongly determined them to be

---

[5] As the Supreme Court has noted,

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.

*Enterprise Wheel*, 363 U.S. at 597.

[6] The language of *Chrysler Marine* is as follows:

> Expressly conferring on the arbitrator, as the agreement does, the authority to decide the meaning and application of the agreement, necessarily implies the authority to find that there has been a breach of the agreement as interpreted, and, we think, further implies the authority to prescribe a remedy which can be said reasonably to cure the breach. Thus the award was within the range of remedial authority which can reasonably be said to be implied by the contract.

819 F.2d at 789-90.

incorrect. Instead, it argues that the arbitrator exceeded his authority in formulating the remedy. Following *Chrysler Marine*, we must consider whether the remedy was within the contemplation of the parties. The Union asserts that the reference in Section 11 of the Supplement to § 7.5 of CBA Article VII shows that the parties agreed that *grievances* challenging incentive standards could properly propose remuneration as an available remedy. Dexter, on the other hand, argues that Section 11 denies an *arbitrator* use of remedial powers (even though presumably the grievance in arbitration had properly demanded a remedy). However, it seems to us contrary to the intent of the parties to allow remuneration to be considered as a remedy at the outset of the grievance process of an incentive rate dispute but not during the ultimate arbitration. The present dispute arose because the parties did not explicitly outline exactly which remedies would be available to an arbitrator in resolving an incentive dispute. If the parties had specifically negotiated this issue, the Union would likely have insisted on remuneration as one possible arbitral remedy, and Dexter would have agreed since there was express agreement that remuneration might be raised at the outset of the grievance process.[7] It would make no sense for the arbitrator to be

---

[7] This reasoning satisfies a requirement in the standard for judicial review of arbitrators' awards. The standard as stated in *Northern Indiana Public Service Company* provides an illustration. "[A]s long as the arbitrator engaged in bone fide contractural interpretation, we are without power to vacate even if we believe the award was factually or legally incorrect." 243 F.3d at 347. *See also Amax Coal Co. v. United Mine Workers of Am., Int'l Union*, 92 F.3d 571, 576 (7th Cir. 1996) ("[I]f there is no possible interpretive route to the arbitrator's award, we will refuse to enforce that award."). Because determining the parties' intent is the essence of contractual interpretation, the fact that the arbitrator's award most likely reflects the intent of the parties had they specifically
(continued...)

helpless to provide redress for the company's breach. *Chrysler Marine*, 819 F.2d at 790. Because Dexter's suggested construction provides no remedy for an the imposition of an improper standard, it is incorrect under *Chrysler Marine* and an erroneous interpretation of the CBA.

In sum, Dexter does not offer a valid argument for overturning the arbitrator's award. It fails to demonstrate that the arbitrator based his award on anything outside the contract. Indeed, the arbitrator based his award on § 8.2 of CBA Article VIII and Section 12 of the Supplement— both of which are part of the fully integrated CBA according to the plain language of Article XV. Hence, this award was not based "on some body of thought, or feeling, or policy, or law that is outside the contract." Thus, the arbitrator's award must stand even if it is the *wrong* interpretation of the CBA; "so long as the award is based on the arbitrator's interpretation—unsound though it may be—of the contract, it draws its essence from the contract." *Ethyl Corp.*, 768 F.2d at 184.

## B. Whether Compliance With the Arbitrator's Award Forces Dexter to Violate the CBA

Dexter's second argument for rejecting the arbitrator's award is somewhat convoluted. It contends that the parties established a relationship between an employee's base wage

---

[7] (...continued)

negotiated remuneration satisfies this requirement. "It is the function of the courts to seek the proper interpretation of a contract which reflects the intentions of the parties." *Lenard v. Argento*, 699 F.2d 874, 900 (7th Cir. 1983); *see also* WILLISTON ON CONTRACTS § 30:2 (Richard A. Lord ed., 4th ed. 2004) ("In the interpretation, and ultimately, in the construction of contracts as well, the avowed purpose and primary function of the court is to ascertain the intention of the parties.").

rate and his incentive pay (which together comprise his total compensation), requiring that incentive rates be consistent throughout the plant or else "skilled workers in one area could be paid less than unskilled workers in another." Dexter argues that this is why the Supplement requires the standards to be consistent throughout the facility, and that it was with these considerations in mind that the Engineer used the same methodology to set standards throughout the plant. The arbitrator allegedly disturbed this uniformity by determining that, of all the standards established by the Engineer, only one—the standard for the 12-inch axle—was improper. Thus, according to Dexter, the practical impact of the arbitrator's Final Award is that Dexter must use a unique methodology to calculate the 12-inch axle incentive rate[8]—one inconsistent with that used to establish the other incentive rates in the plant. Therefore, Dexter argues, the arbitrator's award conflicts with the express terms of the CBA and should be vacated. *See Sunbeam Appliance Co. v. Int'l Ass'n of Machinists*, 511 F. Supp. 505, 508 (N.D. Ill. 1981) (vacating arbitrator's award that was in conflict with the express terms of the collective bargaining agreement). The Union asserts in response that the arbitrator did not require Dexter to do anything, since he found only that the line balancing method for the 12-inch axles was improper.

---

[8] To support this assertion, Dexter cites to the affidavit of Adam Dexter, Director of Operations at Elkhart, submitted with its Motion for Summary Judgment. The Union filed a Motion to Strike the Affidavit. In its Memorandum and Order, the district court left the affidavit in the record "in the interest of caution." The district court, however, noted that it had "serious reservations about the propriety of the affidavit." The Union, in its brief, re-initiates its argument that the affidavit is inadmissible. This dispute, however, is moot, since the only argument Dexter advances that relies on the affidavit lacks merit.

Dexter's argument is unpersuasive for several reasons. First, the Supplement does not contain any express language requiring that standards be "consistent." The only reference to consistency is in Section 12 of the Supplement, which states that the arbitrator's authority "shall be limited to reviewing whether the standard is proper and consistent with those established in the plant . . . ." Neither the parties nor the CBA define "consistency" or describe how it is to be determined. In fact, according to Section 12, only an arbitrator can determine whether a standard is "consistent"—much like the arbitrator here determining that the 12-inch axle line standard was improper.

In addition, as the Union has argued, the arbitrator did not address any concerns about consistency at all—only the impropriety of a particular incentive standard. Indeed, in making his Final Award, the arbitrator stated, "There was no evidence presented about the relationship of other standards in the Plant to those standards set here for the assembly operation"; this suggests that the arbitrator could not determine whether the disputed 12-inch axle incentive rate standard was consistent with other standards since he lacked the evidence to make this determination. And because the arbitrator was an engineer as required by the CBA, there is no indication that this failure resulted from deficiencies in his technical background.

Third and finally, the dispute procedure outlined in the CBA renders Dexter's conclusion premature and speculative since an employee would first have to challenge a standard on grounds of inconsistency to trigger the process by which that standard could be deemed inconsistent. Thus, if Dexter chooses to recalculate and implement a new 12-inch axle line standard, it will presumably do so according to the process outlined in the Supplement. Once this new standard is implemented, an employee can dispute it according to the procedure prescribed in Section 10; a dispute that remains unresolved becomes a second step grievance under Section

11, and if no agreement is reached after the third step of the grievance procedure, then Section 12 allows the dispute to be submitted to arbitration. It is only at this step that the arbitrator reviews whether the standard is "proper and *consistent*." (Emphasis added). Thus, if no employee disputes the new standard, or if such a dispute is settled prior to arbitration, consistency will never be an issue.[9]

Dexter may believe that inconsistency is a forgone conclusion. But the time for it to make that argument was when the CBA was negotiated, not after an arbitrator has made an award by following procedures that Dexter itself agreed to under the CBA. It should have been obvious to Dexter that giving an arbitrator the authority to determine whether an incentive standard is improper or inconsistent might result in a finding that a standard possessed exactly those qualities; hence it cannot now argue that such a ruling violates the CBA. "The parties have bargained *ex ante* for arbitration as an alternative means of dispute resolution, and *ex post* they must abide by this bargain." *Chrysler Marine*, 819 F.2d at 788. "If parties to collective bargaining contracts are unhappy with arbitration awards they can bargain for a different method of selecting arbitrators, or for panels of arbitrators, trial or appellate." *Ethyl Corp.*, 768 F.2d at 187.

## III.

For the above reasons, we AFFIRM the district court's grant of summary judgment to the Union.

---

[9] Other outcomes are possible. Since the 12-inch line was the only line that was contested, there is an implication that this line has a distinct characteristic. Dexter and the Union could agree to use a different methodology on that line than on other lines in the plant.

A true Copy:

Teste:

_____
***Clerk of the United States Court of
Appeals for the Seventh Circuit***