CITIZENS GAS & COKE UTILITY, Appellant–Plaintiff,

v.

LOCAL UNION NO. 1400, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Appellee–Defendant.

No. 49A05–0612–CV–751.

Court of Appeals of Indiana.

Oct. 4, 2007.

Wayne O. Adams III, Susannah M. Pieper, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellant.

Fred Towe, Fillenwarth, Dennerline, Groth & Towe, Kevin W. Betz, Jamie A. Maddox, Betz & Associates, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Citizens Gas & Coke Utility ("Citizens") appeals the trial court's denial of its Verified Complaint and Application to Vacate Arbitration Award or, in the Alternative, for Modification or Correction of Award ("Application to Vacate or Modify Award"). Citizens maintains that Arbitrator Cynthia Stanley ("Arbitrator Stanley") exceeded her powers by considering an unwritten attendance policy requiring progressive discipline in determining that Mr. Russell Hilt ("Mr.Hilt") was unjustly terminated. Additionally, Citizens contends that Arbi-

trator Stanley exceeded her powers by awarding Mr. Hilt's widow $75,000.00 based upon Prudential Insurance Company of America's ("Prudential") life insurance policy. Finally, Citizens argues that Arbitrator Stanley wrongfully refused to hear evidence material to the controversy. Concluding that Arbitrator Stanley did not exceed her powers by considering an unwritten attendance policy requiring progressive discipline, did not exceed her powers by awarding $75,000.00 based upon Prudential's life insurance policy, and did not wrongfully refuse to hear evidence material to the controversy, we affirm the judgment of the trial court.

### Facts and Procedural History

Citizens is a not-for-profit public charitable trust that has provided gas service to the citizens of Marion County, Indiana, for more than a century. In addition to providing natural gas to Marion County through its Gas Operations Division and steam and chilled water to downtown businesses through its Thermal Division, the company manufactures coke through its Manufacturing Division. Mr. Hilt began working for Citizens on March 13, 1981, and continued working for Citizens in their Manufacturing Division for twenty-three years. In 1984, Mr. Hilt, while working, was involved in a very serious industrial accident that resulted in severe injuries, including crushed hips, which kept him off work for many months. As a result of his injuries, Mr. Hilt missed a great deal of work for many years thereafter.

In October 1999, Mr. Hilt received a verbal warning for absenteeism. On July 13, 2001, Mr. Hilt was issued a Last Chance Agreement by Citizens, which included a provision that he maintain an attendance record of 98% or better for two years. On November 12, 2003, Citizens and Local Union No. 1400, International Brotherhood of Electrical Workers ("the

Union") entered into a Collective Bargaining Agreement ("CBA").[1] Section 7.3.2 of the CBA, regarding discharge and disciplinary layoff, states, in pertinent part:

Absence reviews indicating discipline and disciplinary reports for absenteeism/tardiness will be returned to the Union, if, for a period of two (2) years since the most recent absence review indicating discipline or disciplinary report for absenteeism/tardiness in the employee's file, the employee maintains a record with no further discipline for absenteeism/tardiness.

Appellant's App. p. 104. Uncontroverted testimony from Scott Knight established that the Union had always understood the language of Section 7.3.2 to mean that an employee started over with a clean slate if the employee had no further discipline for absenteeism/tardiness for two years after a disciplinary report for absenteeism/tardiness was filed. Additionally, Russell Clemens, Director of Operations and Maintenance for Citizens, testified that Mr. Hilt started over with a clean slate upon successfully completing the terms of the Last Chance Agreement. Moreover, Paragraph 2 of the Last Chance Agreement provided that pursuant to all conditions of the agreement being met, "the Last Chance Agreement will be expunged from Mr. Hilt's employment file, July 11, 2003." *Id.* at 20. Mr. Hilt successfully completed the Last Chance Agreement.

Shortly after satisfying the terms of the Last Chance Agreement, Mr. Hilt went into diabetic shock, which caused him to fall and severely injure his face. Treatment and recovery from this injury, coupled with the on-going management of his blood sugar problems and bouts with flu-like symptoms, led to him missing a significant amount of work in 2003. On January 14, 2004, Citizens terminated Mr. Hilt for absenteeism without having given him any further warnings.

At the time of Mr. Hilt's termination, Citizens' Manufacturing Division maintained an unwritten attendance policy calling for an employee to miss 3.2% or less of his or her scheduled hours. In a rolling twelve-month period, if the employee missed more than 3.2% of his/her scheduled hours, then he or she was subject to progressive discipline. The steps of progressive discipline were: (1) verbal; (2) written; (3) decision-making leave (one-day paid leave); and (4) termination. This unwritten attendance policy requiring progressive discipline had been used since 1988 and was reduced to writing in April 2004.

Following Mr. Hilt's termination, the Union filed a grievance on his behalf against Citizens. Mr. Hilt died in September 2004, approximately eight months after his termination. Upon his death, Mrs. Hilt, through the Union, continued with the grievance procedures. Unable to settle the grievance, both parties agreed to arbitration and the appointment of Arbitrator Stanley. During the arbitration hearing, Citizens argued that no progressive discipline was required because Mr. Hilt had already completed a two-year Last Chance Agreement due to his absenteeism problem and that his continued pattern of absenteeism, coupled with his past record, justified Citizens' discharge without first implementing progressive disci-

---

1. As part of the CBA, Citizens maintained a group life insurance policy through Prudential. Section 15.3.1 of the CBA provided: "The utility shall continue to maintain the current Utility paid Life Insurance Program for qualified employees as outlined in the plan." Appellant's App. p. 122. Prudential's group life insurance policy in effect at the time of Mr. Hilt's death provided for a death benefit of $75,000.00 for all full-time employees actively at work.

pline. Additionally, Citizens argued that it began using Last Chance Agreements in the mid–1990s for long-term employees with absenteeism problems and that the next step following the agreement was termination. In support of this contention, Citizens referenced its discharge of two former long-term employees, Randy Whittaker ("Whittaker") and Brad Sharp ("Sharp"). Both Whittaker and Sharp had a long history of attendance problems and were issued Last Chance Agreements that they failed to comply with and thereafter were terminated. Because Whittaker and Sharp were terminated for violating their Last Chance Agreements and Mr. Hilt successfully completed his Last Chance Agreement, Mr. Hilt was the first Manufacturing Division employee to be terminated for absenteeism without having first gone through the steps of progressive discipline or having violated the terms of a Last Chance Agreement.

In her arbitration decision on December 15, 2005, Arbitrator Stanley concluded that Citizens did not have just cause for terminating Mr. Hilt. Specifically, Arbitrator Stanley stated:

The problems with just cause are these: [Mr. Hilt] had been given no notice that missing days after completion of his Last Chance Agreement would lead summarily, without further process, to discharge. He had successfully completed his Last Chance Agreement. He was legitimately injured and then ill after the expiration of that agreement, and the Company is not arguing otherwise. He had no notice that, this time, the Company had no intention of following its own past practice-that absenteeism problems were dealt with through progressive discipline.

Further, the penalty of discharge bears no relationship to [Mr. Hilt's] successful completion of the Last Chance Agree-

ment, which by its very terms was curative of [Mr. Hilt's] past record of absentee problems, the very record that the Company was, in reality, looking back upon to justify summary discharge. Even if the Company did consider [Mr. Hilt's] past discipline for absenteeism prior to the Last Chance Agreement, there was only one 1999 verbal warning, plus the successful Last Chance Agreement.

*Id.* at 23. Furthermore, Arbitrator Stanley disposed of Citizens' argument regarding the termination of Whittaker and Sharp deeming their scenarios distinguishable from Mr. Hilt's case because those two employees were terminated while still subject to their Last Chance Agreements, whereas here, Mr. Hilt had successfully completed his Last Chance Agreement. Ultimately, Arbitrator Stanley concluded that Citizens did not have just cause to terminate Mr. Hilt's employment and, but for the unjust discharge, he would have been an employee on the date of his death entitling Mrs. Hilt to life insurance proceeds of $75,000.00. As a result, Arbitrator Stanley ordered Citizens "within thirty days to make Grievant whole in all respects, including back pay to the date of Grievant's death, along with all fringe benefits to which he is entitled, including life insurance proceeds." *Id.* at 24.

On January 9, 2006, Citizens submitted a letter to Arbitrator Stanley requesting an additional evidentiary hearing "because the record is not sufficient to permit the parties to determine the precise relief awarded to [Mr. Hilt] or to calculate the monetary value thereof." *Id.* at 26. This letter also requested an evidentiary hearing on the calculation and clarification of the award on the basis that:

there is no evidence in the record regarding the earnings, if any, received by the Grievant after his termination; nor

is there any evidence regarding his ability to work during the period between his termination and his death. Such evidence would be relevant to mitigation of the Grievant's damages and the calculation of any offsets with respect to the back wages payable to the Grievant. Similarly, aside from the COBRA and life insurance evidence presented by the Utility, there is no evidence in the record regarding any fringe benefits the Grievant claims, nor the Grievant's expenditures for obtaining said benefits after his termination.

Thus, Citizens Gas respectfully requests that you set this arbitration for an evidentiary hearing regard[ing] the relief awarded to the Grievant and thereafter change your award to conform to the evidence presented at said hearing. Correspondingly, Citizens Gas requests that in preparation for said hearing you direct the Union to produce to undersigned counsel at least ten (10) days before said hearing the Grievant's federal income tax return for 2004, including all W–2 forms and other documents showing earnings received by the Grievant during 2004, as well as all documents in the possession of the Grievant's widow or legal counsel pertaining to the Grievant's medical insurance benefits and expenditures for same during 2004, all medical insurance claim forms, and all documents pertaining to Grievant's medical treatment, hospitalization or disability during 2004. Citizens Gas also requests that you direct the Union to make the Grievant's widow available to testify at the evidentiary hearing requested above regarding the foregoing matters.

*Id.* at 26–27.

On January 17, 2006, the Union responded in a letter to Arbitrator Stanley and objected by stating, in pertinent part:

I would first note that the record in this case is certainly sufficient to permit the parties to determine the precise relief awarded to Russell Hilt's widow. The Employer had ample opportunity to question Mrs. Hilt at the arbitration proceeding regarding whether *Russell Hilt worked during the time* he was terminated until his death, whether he was physically able to work and what if any earnings he received during the time period between his termination and his death. Additionally, the [CBA] defines which fringe benefits Mr. Hilt's widow is entitled to. No hearing is necessary to make that determination. All of that information can be provided to the Employer by documentary evidence. Further, all of the fringe benefits to which Russell Hilt (now his widow) was entitled is clearly set forth in the parties' CBA.

*Id.* at 54. On January 18, 2006, Arbitrator Stanley denied Citizens' request for an additional evidentiary hearing.

On March 13, 2006, Citizens filed its Application to Vacate or Modify Award in Marion Superior Court, seeking judicial review of Arbitrator Stanley's decision. Citizens alleged:

that the Award should be vacated because Arbitrator Stanley exceeded her powers and the Award could not be corrected without affecting the merits of the decision upon the controversy submitted, and because Arbitrator Stanley refused to hear evidence material to the controversy. In the alternative, Citizens Gas moved that the Award should be modified or corrected because, in addition to the foregoing grounds, Arbitrator Stanley awarded upon a matter not submitted to her and the Award could be corrected without affecting the merits of the decision upon the issues submitted.

Appellant's Br. p. 2.[2] On November 30, 2006, the trial court denied Citizens' Application to Vacate or Modify Award and upheld Arbitrator Stanley's decision and award. Citizens now appeals.

## Issues

Citizens raises three issues on appeal, which we rephrase as: (1) whether Arbitrator Stanley exceeded her powers by considering an unwritten attendance policy requiring progressive discipline in determining that Mr. Hilt was unjustly terminated; (2) whether Arbitrator Stanley exceeded her powers by awarding Mrs. Hilt $75,000.00 based upon Prudential's life insurance policy; and (3) whether Arbitrator Stanley wrongfully refused to hear evidence material to the controversy.

■■■ Judicial review of arbitration awards is very narrow in scope. *Sch. City of East Chicago v. East Chicago Fed'n of Teachers, Local No. 511,* 622 N.E.2d 166, 168 (Ind.1993). "An award should only be set aside when one of the grounds specified by the Uniform Arbitration Act for vacation of an award is shown." *Id.* A party who seeks to vacate an arbitration award under the Uniform Arbitration Act bears the burden of proving the grounds to set aside the award. *Id.* The role of an appellate court in reviewing an arbitration award is limited to determining whether the defendant has established any of the grounds for challenge permitted by the Uniform Arbitration Act. *Id.*

■■■ In the context of arbitration pursuant to a collective bargaining agreement, "[a]n arbitrator's award is enforceable so long as it draws its essence from the collective bargaining agreement." *Fort Wayne Cmty. Sch. v. Fort Wayne Educ. Ass'n,* 490 N.E.2d 337, 340 (Ind.Ct.App.

1986). "A court will vacate an award only when the arbitrator's words manifest an infidelity to this obligation." *Dexter Axle Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 90, Lodge 1315,* 418 F.3d 762, 768 (7th Cir.2005) (quotations omitted). "[I]t is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference) that the award can be said not to draw its essence from the [collective bargaining agreement]." *Id.* We resolve any reasonable doubt regarding whether an award draws its essence from a collective bargaining agreement in favor of enforcing the award. *Id.* Therefore, we will vacate an award "only if there is no possible interpretive route to the award." *Id.*

## I. Did Arbitrator Stanley Exceed Her Powers by Considering the Unwritten Attendance Policy Requiring Progressive Discipline?

Citizens argues that Arbitrator Stanley's award should be vacated because she exceeded the powers granted to her by the CBA. Indiana Code § 34–57–2–13(a)(3) provides:

> Upon application of a party, the court shall vacate an award where:
>
> \* \* \* \* \* \*
>
> ■■■ (3) the arbitrators exceeded their powers and the award can not be corrected without affecting the merits of the decision upon the controversy submitted[.]

Citizens maintains that Arbitrator Stanley exceeded her powers in holding that Citizens unjustly terminated Mr. Hilt by fail-

---

**2.** Citizens' Application to Vacate or Modify Award seeks alternative relief because the Act contemplates that "[a]n application to modify or correct an award may be joined in the alternative with an application to vacate the award." *See* Ind.Code § 34–57–2–14(c).

ing to follow an unwritten attendance policy requiring progressive discipline. In support of its argument, Citizens directs us to Section 7.2.2 of the CBA, which states, in pertinent part, "Any matter to be considered by the arbitrator, and any decision of the arbitrator, shall be consistent with and limited to the terms of this Agreement." Appellant's App. p. 103. Citizens maintains that because Arbitrator Stanley admittedly relied, in part, on an unwritten attendance policy requiring progressive discipline in determining that Mr. Hilt was unjustly discharged, she exceeded her powers in violation of Indiana Code § 34–57–2–13(a)(3). We cannot agree.

The arbitrator was charged with the duty to decide, among other issues, whether Mr. Hilt was unjustly terminated. Here, there are no provisions in the CBA that indicate what type of discipline is required for excessive absenteeism. That is, nowhere in the agreement does it require progressive discipline for excessive absenteeism nor does it preclude it. Because there are no provisions in the CBA, Arbitrator Stanley was well within her power to consider this past practice and therefore did not exceed her powers by considering it in the arbitration hearing. *See N.L.R.B. v. Strong,* 393 U.S. 357, 365, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969) ("An arbiter is not of course free to dispense his own brand of industrial justice but is admonished to reach a fair solution of a problem within the letter and spirit of the collective bargaining agreement. The past practices of the parties, as well as the contractual provisions themselves, are the guidelines.") (quotations omitted).

This is even more so when the unwritten attendance policy requiring progressive discipline has been in place since 1988, became a written policy in April 2004, and was commonly implemented by Citizens in dealing with employee discipline issues.

Furthermore, Mr. Hilt was the first and only Manufacturing Division employee to be terminated for absenteeism without either having gone through the steps of progressive discipline or having violated the terms of a Last Chance Agreement. Moreover, he was given no notice that missing days after completion of his Last Chance Agreement would summarily lead to discharge. Thus, Arbitrator Stanley did not exceed her authorized powers by relying on this undisputed evidence to determine that Mr. Hilt was unjustly discharged. Under the facts of this case, to hold otherwise would be to "limit the discretion and powers of a neutral arbitrator to whom a controversy has been duly submitted," which we will not do. *See Fort Wayne Educ. Ass'n v. Fort Wayne Cmty. Schools,* 753 N.E.2d 672, 675 (Ind.Ct.App. 2001).

## II. Did Arbitrator Stanley Exceed Her Powers by Awarding Mrs. Hilt $75,000.00 Based Upon Prudential's Life Insurance Policy?

Again, pursuant to Indiana Code § 34–57–2–13(a)(3), Citizens argues that Arbitrator Stanley exceeded her authority by awarding Mrs. Hilt $75,000.00 based upon Prudential's life insurance policy. Citizens maintains "the arbitration provision in the labor agreement between Citizens Gas and the Union certainly cannot be construed so broadly as to delegate to the arbitrator the power to arbitrate disputes between the Union or Mrs. Hilt and a third party, such as Prudential." Appellant's Br. p. 15.

In support of its argument, Citizens relies on *Eljer Manufacturing Inc. v. Kowin Development Corp.,* 14 F.3d 1250 (7th Cir. 1994). *Eljer* concerned a dispute between Simonds Division ("Simonds") and Simonds' parent company, Eljer Manufacturing, Inc. ("Eljer"), on the one hand, and Kowin Development Corporation ("Kowin") on the other. The dispute arose out of

a joint venture agreement between Simonds and Kowin. Simonds and Kowin agreed to submit any disputes arising under the agreement to arbitration. As part of the transaction establishing the joint venture, the Bank of China purchased certain equipment from Simonds for $1,000,000.00 and leased it back to the joint venture. After the joint venture failed, Kowin sued Eljer and Simonds. Eljer moved to compel arbitration pursuant to the Kowin–Simonds agreement, and the district court granted the motion. The arbitrator awarded Kowin $14,844,858.00, including $1,000,000.00 that "represented what Kowin alleged to be Simonds' unjust enrichment from the sale of its equipment" to the Bank of China. *Id.* at 1253. Eljer filed a motion to vacate or modify the award. The district court affirmed the arbitrator's order with regard to the $1,000,000.00 from the Bank of China. Eljer appealed.

On appeal, Eljer argued that the arbitrator exceeded his powers in awarding Kowin damages for a loss it did not suffer. The United States Court of Appeals for the Seventh Circuit agreed, noting that the $1,000,000.00 in question was "comprised solely of the fee which Eljer received from the Bank of China for some of Simonds's equipment" and that "[t]he Bank of China has sued Eljer in China for fraud in connection with this sale." *Id.* at 1256. As such, the Court held, "While we agree that Eljer should not be permitted to benefit from any fraudulent activity, it is unclear why Eljer should pay Kowin for losses suffered by the Bank of China." *Id.* The Court explained:

> Though the arbitration clause is broadly worded, it cannot be construed to delegate to the arbitrator the power to arbitrate disputes between Eljer and a third party. The language of the Clause limits arbitration to disputes arising under the contract. The transaction between

the Bank of China and Eljer was completely separate from the Kowin–Simonds agreement and was therefore outside the scope of the arbitration clause.

*Id.* at 1256–57. The Court concluded that the arbitrator had exceeded the scope of his powers and vacated the award as to the $1,000,000.00 in question. *Id.* at 1257.

 Citizens maintains that the rationale of *Eljer* is applicable to this case because it was Prudential, not Arbitrator Stanley, "that had the exclusive right and authority to determine whether, at the time of [Mr. Hilt's] death in September 2004 (assuming his employment had not been terminated in January 2004), he was 'actively employed' and otherwise eligible for benefits under the contract." Appellant's Br. p. 16. In other words, Citizens contends that just like the arbitrator in *Eljer*, Arbitrator Stanley exceeded her powers by going outside of the CBA to interpret and apply a separate and distinct contract between Citizens and a third party, Prudential.

The Union responds that Citizens reliance on *Eljer* is misapplied because it "is a misrepresentation as to the true nature of the grievance that was filed protesting Mr. Hilt's discharge." Appellee's Br. p. 29. In support of its position, the Union maintains that there is no dispute between Mrs. Hilt and Prudential. "The dispute is between the Union and Citizens and the issue is whether Mr. Hilt was discharged for just cause, and if not, what the appropriate remedy was." *Id.* Because Arbitrator Stanley determined that Mr. Hilt was unjustly terminated, the Union maintains that it was well within her authority to award Mrs. Hilt the fringe benefits that would have been paid to her but for Mr. Hilt's wrongful discharge. The Union is correct.

There is no dispute between Mrs. Hilt and a third party. The dispute is between the Union and Citizens. Additionally, the Seventh Circuit, in *Eljer*, makes clear that "[t]he transaction between the Bank of China and Eljer was completely separate from the Kowin–Simmonds agreement and was therefore outside the scope of the arbitration clause." *Eljer*, 14 F.3d at 1256. Here, the life insurance proceeds are not completely separate from the CBA because the CBA specifically provided for life insurance as a fringe benefit under Article 15, Benefit Plans. Moreover, Arbitrator Stanley's order is not an order requiring Prudential to pay but rather is an order requiring Citizens to pay because it unjustly terminated Mr. Hilt and, but for the unjust termination, he would have qualified for $75,000.00 in life insurance. Thus, the trial court did not err in denying Citizens' Application to Vacate or Modify Award because Arbitrator Stanley did not exceed her powers by awarding Mrs. Hilt $75,000.00 based on the Prudential life insurance policy.[3]

### III. Did Arbitrator Stanley Refuse to Hear Evidence Material to the Controversy?

Citizens next argues that the trial court erred by not vacating the arbitration award because Arbitrator Stanley refused to hear evidence material to the controver-

sy in violation of Indiana Code § 34–57–2–13(a)(4), which provides:

> (a) Upon application of a party, the court shall vacate an award where:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> ■ (4) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefore *or refused to hear evidence material to the controversy* or otherwise so conducted the hearing, contrary to the provisions of section 6 of this chapter, as to prejudice substantially the rights of a party.

(Emphasis added). Arbitrators have wide latitude regarding evidentiary issues and are not bound by the rules of evidence. *See Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 592 (7th Cir.2001). An arbitrator is not required to hear all evidence tendered by the parties but rather must merely give each of the parties an adequate opportunity to present evidence and arguments. *Id.* "It is when the exclusion of relevant evidence actually deprived a party of a fair hearing that it is appropriate to vacate an arbitral award." *Id.*

Citizens maintains that after the award, Arbitrator Stanley wrongfully refused to hear evidence material to the controversy, i.e. evidence of damages, in contravention of Indiana Code § 34–57–2–13(a)(4). Citizens claims that the Union did not present evidence to support the amount of back pay and fringe benefits, namely, $75,000.00

---

**3.** In the alternative, Citizens contends that Arbitrator Stanley's award to Mrs. Hilt of $75,000.00 based upon the Prudential life insurance policy should be modified because any life insurance benefits owed to Mrs. Hilt are separate and distinct from the controversy presented to Arbitrator Stanley and involves Mrs. Hilt and a third party, Prudential. Citizens maintains that in awarding these benefits to Mrs. Hilt, Arbitrator Stanley awarded upon a matter not submitted to her in violation of Indiana Code § 34–57–2–14(a)(2). Citizens' argument in this regard mirrors its argument that Arbitrator Stanley exceeded

her powers by awarding Mrs. Hilt $75,000.00 based upon Prudential's life insurance policy, the only difference being that now it frames the issue in terms of modifying the award instead of vacating the award. Because we earlier stated that Arbitrator Stanley did not exceed her powers in awarding Mrs. Hilt $75,000.00 based upon Prudential's life insurance policy, it tacitly follows that this matter was properly before her and ripe for her determination. Thus, Arbitrator Stanley did not issue an award upon a matter not submitted to her.

in life insurance proceeds, nor did it present evidence of "whether Mr. Hilt could have remained 'actively at work' at Citizen's [sic] Gas on the date of his death in order to entitle his widow to payment of the Prudential life insurance proceeds." Appellant's Br. p. 18. As such, Citizens contends that the Union did not meet its burden of proof and that "[r]ecognizing this blank spot in the record, [it has] exercised its right under [the Indiana Code] to apply to the arbitrator to modify or correct her award." *Id.*

In support of its position, Citizens primarily relies on *Mall City Ambulance, 115 Lab. Arb. Reports* 265 (Arbitrator George Szuter, 2000 WL 33215069 (2000)), for the proposition that the Union has failed to satisfy its burden of proof with regard to providing evidence from which the award can be calculated with certainty. In *Mall City,* the Teamsters Local Union No. 7 filed a grievance against Mall City Ambulance ("Mall City") on behalf of an employee ("grievant") after he was terminated for failing to report for an assigned shift. *Id* at 266. Grievant asserted that because he was terminated without just cause he should be reinstated in his position and be made whole by receiving back pay and benefits owed him. *Id.* Ultimately, the arbitrator determined that the grievant had been unjustly terminated but refused to award him damages claiming the union did not meet its burden of proving damages. *Id.* at 274, 275. Citizens argues that *Mall City* is akin to this case because Mrs. Hilt did not testify and the Union did not present any "evidence establishing that [Mr. Hilt] was unemployed, or for how long, after the employer fired him." Appellant's Br. p. 19. We cannot agree. Citizens relies on *Mall City* for the sole purpose of arguing that the Union failed to satisfy its burden of proving damages and therefore did not provide sufficient evidence in support of its claim for damages.

Citizens' reliance on *Mall City* in this regard is improper because sufficiency of the evidence is not an argument available on appeal of an arbitrator's award. *See* Ind. Code § 34–57–2–13.

▮ Moreover, Citizens' reliance on Indiana Code § 34–57–2–13(a)(4) is misplaced. Indiana Code § 34–57–2–13(a)(4) states, in pertinent part, "the court shall vacate an award where ... the arbitrators ... refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 6 of this chapter...." (Formatting altered). Indiana Code § 34–57–2–13(a)(4) does not contemplate a review of a trial court's denial of a party's request for an *additional* evidentiary hearing. Our contemplation of whether Arbitrator Stanley refused to hear evidence material to the controversy in violation of this statute necessarily involves an assessment of the evidence as it pertains to the *actual* arbitration hearing, not to Arbitrator Stanley's denial of Citizens' request for an *additional* hearing. Moreover, Citizens had every opportunity to present evidence at the arbitration hearing and did not, and Arbitrator Stanley was provided with all relevant information to make a proper decision. If Citizens believed it necessary to establish that Mr. Hilt had been unable to work during the period of time between his discharge and death and/or that he had failed to mitigate his damages, all Citizens had to do was call Mrs. Hilt as a witness, as she was present at the arbitration hearing. Thus, Arbitrator Stanley did not refuse to hear evidence material to the controversy in violation of Indiana Code § 34–57–2–13(a)(4).

Finally, Citizens argues that they are unable to calculate damages based on the limited evidence provided at the hearing. We disagree. All of the evidence neces-

sary to compute the contractual damages owed to Mr. Hilt was presented at the arbitration hearing via the CBA. The CBA contains the terms and conditions of employment for all bargaining unit employees (which included Mr. Hilt) and sets forth in detail wages, back pay, and fringe benefits including health and welfare, pension, life insurance, and a 401(k) plan. Additionally, the limited record submitted to us by the parties indicates that Mr. Hilt was entitled to COBRA benefits and a life insurance policy[4] with death benefits of $75,000.00 and to back pay from the date of his termination to the date of his death.[5] We therefore decline to vacate the trial court's order and affirm Arbitrator Stanley's award.[6]

Affirmed.

ROBB, J., concurs.

SULLIVAN, Sr. J., concurs with separate opinion.

SULLIVAN, Senior Judge, concurring.

I concur but write to add a parenthetical comment as to Part II concerning the $75,000 award representing the equivalent of a life insurance benefit under the group policy issued by Prudential pursuant to the CBA.

That amount would have been payable to Mrs. Hilt under the Prudential insurance policy had Mr. Hilt been "actively employed" at the time of his death. It is important to note, as does the majority, that a third party, i.e., Prudential, was not ordered to pay proceeds of the policy. In this regard, therefore, I agree with the majority that the dispute is not between the Union and a third party but rather remains a dispute between the Union and Citizens.

I also agree that unlike the situation in *Eljer Manufacturing, Inc. v. Kowin Development Corp.*, 14 F.3d 1250 (7th Cir.1994), *cert. denied*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810, the life insurance proceeds are not completely separate from the Collective Bargaining Agreement between the Union and Citizens because the CBA specifically provided for such policy benefits as a fringe benefit.

This, however, does not end the inquiry. Citizens places great emphasis upon a provision of the insurance policy issued by Prudential pursuant to the CBA between Citizens and the Union. Under the insurance policy in place, it was the sole prerogative of Prudential as Claims Administrator of the insurance plan "to make factual findings, and to determine eligibility for benefits." (App. at 33). This provision of the Insurance Contract as part of the CBA does not make Prudential a third party to the dispute between Citizens and the Union. It is argued, however, that the provision prohibits the Arbitrator under the CBA to short circuit the fact-finding prerogative of Prudential. The only possible

4. We note that Citizens admitted to COBRA and life insurance evidence in its January 9, 2006, letter to Arbitrator Stanley stating, "Similarly, aside from the COBRA and life insurance evidence presented by the Utility, there is no evidence in the record regarding any fringe benefits the Grievant claims...." Appellant's App. p. 26.

5. Citizens also contends that they are unable to calculate damages because the record does not contain Mr. Hilt's exact date of death. The record reflects that Mr. Hilt died September 2004. Thus, while we agree with Citizens that the record does not provide Mr. Hilt's exact date death, we are nevertheless confident that sophisticated parties, such as Citizens and the Union, can easily ascertain the precise day Mr. Hilt died.

6. To the extent that the full record indicates that Mr. Hilt was entitled to other fringe benefits and evidence was submitted to prove the amount of damage to him for failing to receive them, then he is entitled to those damages as well.

factual dispute in this respect is whether, absent his employment termination, Mr. Hilt would have been "actively employed" at the time of his death.[7]

I would hold it unnecessary to resolve that factual issue. It was the improper conduct by Citizens that made it impossible for Mr. Hilt to be employed, "actively" or otherwise, at the time of his death. It was this conduct that rendered inapplicable or inoperable the provision for Prudential to make the factual determination.

For this reason Citizens may not justifiably insulate *itself* from liability under the

life insurance coverage afforded by the CBA. And for this reason, it was appropriate for the Arbitrator to award $75,000 (the equivalent of the policy benefit) against *Citizens* rather than an order for *Prudential* to pay under the insurance contract itself.

7. In this respect I reach no conclusion whether the burden to come forward with such evidence was upon the Union and/or Mrs. Hilt or whether it was Citizens' duty to submit evidence that he would not have been so employed at the time of his death. Nevertheless, one might argue that by seizing upon the Union's or Mrs. Hilt's failure to adduce evidence that Mr. Hilt would have been "actively employed," Citizens was claiming that such evidence was essential to the claim for life insurance benefits and of course, would have been appropriately considered by the Arbitrator. Taken in this light, the position would seem to undercut the argument that the Arbitrator could not make the determination at all because to do so would usurp Prudential's sole fact-finding prerogative. *See infra.*