**MARION COMMUNITY SCHOOL CORPORATION, Appellant–Plaintiff,**

v.

**MARION TEACHERS ASSOCIATION, Appellee–Defendant.**

**No. 27A02–0609–CV–812.**

Court of Appeals of Indiana.

Aug. 8, 2007.

Publication Ordered Aug. 30, 2007.

Michael D. Conner, Spitzer Herriman Stephenson Holderead Musser & Conner, LLP, Marion, IN, Attorneys for Appellant.

Eric M. Hylton, Dann Pecar Newman & Kleiman, P.C., Indianapolis, IN, Attorney for Appellees.

**OPINION**

MATHIAS, Judge.

The Marion Community School Corporation ("MCSC") filed a motion in Grant Circuit Court to vacate arbitration award. The trial court denied the motion to vacate and the MCSC appeals arguing that the arbitrator exceeded his authority when he ordered the MCSC to pay attorney fees and to issue an apology to teacher Roger Sharp ("Sharp"). Concluding that the trial court did not err when it denied the MCSC's motion to vacate arbitration award, we affirm.

## Facts and Procedural History

On November 6, 2003, Sharp, a math teacher at Marion High School, was involved in an altercation with a student when he attempted to remove the student from his classroom due to her disruptive behavior. The following day, school officials suspended Sharp with pay effective immediately after they concluded that Sharp used unreasonable force. A written reprimand was also placed in Sharp's personnel file.

Shortly thereafter, Sharp filed a grievance alleging that his suspension violated the collective bargaining agreement between the MCSC and the Marion Teachers Association ("the Association"). After the MCSC denied the grievance, Sharp's request for an arbitration hearing was granted. The hearing was held on June 22, August 30 and 31, 2004. The arbitrator issued his opinion and award on January 6, 2005. The arbitrator determined that Sharp was disciplined without just cause and without due process in violation of the collective bargaining agreement. Consequently, the arbitrator ordered the MCSC to pay Sharp's attorney fees and costs in the amount of $1937.50, to purge any materials in his personnel file pertaining to

the November 6, 2003 incident, and to issue a letter of apology to Sharp.

On April 5, 2005, the MCSC filed a motion to vacate arbitration award, and in response, the Association filed a motion to confirm the award. The trial court held a hearing on the parties' motions on May 18, 2006. On September 1, 2006, the court issued its findings of facts and conclusions of law, finding in pertinent part:

> 7. On January 6, 2005, the Arbitrator determined that Sharp was disciplined without just cause and without due process in violation of the [collective bargaining] [a]greement. The [MCSC] has not challenged the Arbitrator's factual and legal findings. Instead, the [MCSC] is only challenging the remedy.
>
> * * *
>
> 18. Here, because the Agreement contains broad, general arbitration language, the Arbitrator had broad discretion in fashioning an award which would include the authority to award attorney fees and an apology.

Appellant's App. pp. 2, 5–6. The court denied the MCSC's motion to vacate arbitration award and granted the Association's motion to confirm the award. The MCSC now appeals.

## Discussion and Decision

■ It is the policy of our state to favor enforcement of an arbitration award, and arbitration disputes are interpreted in light of that policy. *Chesterfield Mgmt., Inc. v. Cook,* 655 N.E.2d 98, 102 (Ind.Ct. App.1995), *trans. denied.* Indiana's Uniform Arbitration Act " 'provides a mechanism for enforcing agreements to arbitrate and for securing judicial review and enforcement of awards made.' " *Fort Wayne Educ. Ass'n v. Fort Wayne Cmty. Schs.,* 753 N.E.2d 672, 675 (Ind.Ct.App.2001) (quoting *Sch. City of E. Chicago, Ind. v. E.*

*Chicago Fed'n of Teachers, Local No. 511,* 422 N.E.2d 656, 658 (Ind.Ct.App.1981)).

> Judicial review of an arbitration award is extremely narrow in scope. An award should only be set aside when one of the grounds specified by the Uniform Arbitration Act for vacation of an award is shown. A party who seeks to vacate an arbitration award under the Uniform Arbitration Act bears the burden of proving the grounds to set the award aside. The role of an appellate court in reviewing an arbitration award is limited to determining whether the challenging party has established any of the grounds permitted by the Uniform Arbitration Act.

*Id.* (internal citations omitted).

■ A trial court may vacate an arbitration award where: "the arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." Ind.Code § 34–57–2–13(a)(3) (1999). This provision is to be "narrowly construed. The statutory provision does not attempt to limit the discretion and powers of a neutral arbitrator to whom a controversy has been duly submitted." *Bopp v. Brames,* 677 N.E.2d 629, 631–32 (Ind.Ct.App.1997) (internal citation omitted). Moreover, "the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." Ind.Code § 34–57–2–13(a). We therefore reject the MCSC's argument that the arbitrator's award of attorney fees violates Indiana law.

■ "The Uniform Arbitration Act does not declare which issues are subject to arbitration." *Bopp,* 677 N.E.2d at 632. "Rather, arbitration arises through contract, and the parties are essentially free to define for themselves what questions may be arbitrated, remedies the arbitrator

may afford, and the extent to which a decision must conform to the general principles of law." *Id.* Consequently, "an arbitrator is limited by the bounds of the agreement from which he draws his authority and an arbitrator is expected to be aware of those limits." *Id.*

> When an award is attacked under the Uniform Arbitration Act on the grounds that the arbitrator[ ] exceeded [its] powers through erroneous interpretation of a contract, the reviewing court determines whether the arbitrator['s] construction of the contract "is a reasonably possible one that can seriously be made in the context in which the contract was made."

*Id.* (citation omitted).

 The collective bargaining agreement at issue does not contain any provision concerning whether a party to arbitration may be awarded attorney fees. Importantly, the agreement is virtually silent regarding the arbitrator's remedial powers.[1] The arbitrator's authority is limited only by the following provision: "The arbitrator shall have no power to alter, add to, or subtract from the terms of this Agreement." Appellant's App. p. 72.

 Where an agreement contains a broad arbitration clause, "courts have generally held that arbitrators are not bound by the principles of substantive law." *Sch. City of East Chicago,* 422 N.E.2d at 662. "'If the arbitration agreement is silent with regard thereto, at common law and under most of the arbitration statutes, the arbitrators may declare law as they please, and no award will be vitiated because of their legal errors.'" *Id.* (quoting Williston, *Contracts* § 1929 (rev. ed.1938)).

 The MCSC contends that the arbitrator exceeded his authority and violated the agreement by "adding a provision to the contract for the party prevailing in arbitration to receive attorney fees from the party that did not prevail." Br. of Appellant at 13. However, the agreement does not set forth, by way of illustration or limitation, any remedies an arbitrator may impose for wrongful *suspension.* Therefore, following the MCSC's argument to its logical conclusion, an arbitrator would be powerless to impose any remedy. The parties simply could not have intended that result. Because the arbitrator "derives all his powers from the agreement, the agreement must implicitly grant him remedial powers when there is no explicit grant." *See Miller Brewing Co. v. Brewery Workers Local No. 9,* 739 F.2d 1159, 1163 (7th Cir.1984). Accordingly, we conclude that the arbitrator had authority under the agreement to award attorney fees to Sharp.

 The MCSC also asserts that in awarding attorney fees, the arbitrator essentially awarded punitive damages and an award of punitive damages against a public entity is against public policy. We agree that an award of punitive damages against a governmental entity generally violates public policy. *See Brownsburg Cmty. Sch. Corp. v. Natare Corp.,* 824 N.E.2d 336 345–46 (Ind.2005); *Sch. City of East Chicago,* 422 N.E.2d at 663. However, the arbitrator's award of attorney fees was compensatory in nature, as the fees were awarded to reimburse Sharp for the expenses of arbitrating his wrongful discipline. *See* Appellant's App. p. 59

---

1. In the event that a teacher is unjustly discharged or unjustly denied renewal of his/her contract, the agreement specifically provides that "he/she shall be reinstated with full reimbursement of all professional compensation lost. If any teacher shall have been found to have been improperly deprived of any professional compensation or advantage, the same or its equivalent in money shall be paid to him/her." Appellant's App. p. 15.

("[G]rievant Sharp shall be made whole as follows ...").

■ The MCSC similarly argues that "ordering a letter of apology is punitive in nature" and therefore "is beyond the legal authority of the arbitrator to impose." Br. of Appellant at 15. Moreover, it asserts that "the effect of the arbitrator's award, ... would be to chill the inclination of school officials across Indiana to act on reports of child abuse." *Id.* at 18.

The arbitrator ordered the MCSC to issue a letter of apology to Sharp because "[i]t is operationally impossible, in the mind of the arbitrator, to sufficiently make grievant Sharp whole for potential losses to his professional reputation because of public newspaper reports about what he allegedly may have done in November of 2003 while on assignment as a math teacher at Marion [H]igh [S]chool." Appellant's App. p. 59. The trial court issued the following findings of fact concerning the apology letter:

20. In violation of the Agreement, the School Corporation suspended Sharp and made comments in the local newspaper implying that he had done something wrong. These actions clearly could harm Sharp's reputation.

21. A logical remedy in hopes to rehabilitate this damage to Sharp's reputation is an acknowledgement by the School Corporation that it was wrong and an apology so the public can have restored faith in Sharp. Such an apology in no way "chills" the School Corporation's ability to report these incidents to the authorities. Instead, an apology teaches the School Corporation to follow the Agreement in the future and also not to make derogatory comments in the newspaper. Indiana law provides an ar-

bitrator with the broad remedial authority to make such an award.

Appellant's App. p. 10.

The arbitrator thoughtfully fashioned the remedy at issue in an attempt to correct the harm done to Sharp's reputation when a MCSC official made a statement implying that Sharp had acted inappropriately in dealing with a student. Importantly, the allegations against Sharp had not been fully investigated when the statement was made, and therefore, whether Sharp had committed any wrongdoing had not yet been finally determined.

Ordering the MCSC to issue an apology in no way chills its ability to report such incidents to authorities, but simply cautions the MCSC against making public statements "until the full facts involving any legal allegations against teachers see the light of day." Appellant's App. p. 59. For these reasons, we conclude that the arbitrator did not exceed his authority under the agreement when he ordered the MCSC to issue a letter of apology to Sharp.[2]

**Conclusion**

The trial court properly denied the MCSC's motion to vacate arbitration award.

Affirmed.

DARDEN, J., and KIRSCH, J., concur.

*ORDER*

On August 8, 2007, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Motion for Publication of Memorandum Decision.

**2.** Contrary to the MCSC's argument, the fact that Sharp has filed a defamation action against the MCSC is not relevant to the issues presented in this appeal.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellee's Motion to Publish Memorandum Decision is GRANTED, and this Court's opinion heretofore handed down in this cause on August 8, 2007, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

KIRSCH, DARDEN and MATHIAS, JJ., concur.