**FIDUCIAL INVESTMENT ADVISORS,**
**Appellant–Plaintiff,**

**v.**

**Troy C. PATTON, Appellee–Defendant.**

**No. 49A02–0806–CV–519.**

Court of Appeals of Indiana.

Jan. 29, 2009.

Mary F. Schmid, Stewart & Irwin, P.C. Indianapolis, IN, Attorney for Appellant.

Donald G. Orzeske, Jennifer L. Blackwell, Goodin, Orzeske & Blackwell, P.C., Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Fiducial Investment Advisors, Inc. ("FIA") appeals from the trial court's confirmation of an arbitration award in favor of Troy C. Patton ("Patton"). FIA presents the following issues for review:

1. Whether the arbitration panel exceeded its authority when it determined that FIA was liable to Patton for vacation pay and unreimbursed business expenses.

2. Whether the arbitration panel's award of attorney's fees was procured by fraud.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In 2004, Fiducial Financial Services, Inc. ("FFS") purchased from Patton, as principal stockholder, all of the outstanding stock in Frontier Financial Consultants, Inc., a securities broker-dealer, and Frontier's related business entities. Subsequently, one of the companies, Frontier Financial Consultants, was renamed Fiducial Investment Advisors, Inc. In 2006, FIA was a securities broker-dealer registered with and regulated by the United States Securities and Exchange Commission and was a member of the National Association of Securities Dealers ("NASD"), a securities self-regulatory or-

ganization.[1] Pursuant to an employment agreement between Patton and FFS, Patton served as Director of Financial Services for FFS, a salaried position that included vacation and other employment benefits. The employment agreement between Patton and FFS included a non-compete clause. Patton was also registered with the NASD as an associated person with FIA, was FIA's president and financial operations principal, and was paid commissions for his work at FIA.

Disputes arose between Patton on one hand and FFS and FIA on the other. In October 2005, Patton and others filed suit in federal district court against FFS; Fiducial, Inc. (FFS' parent corporation); and certain officers and directors of the parent corporation. On January 5, 2006, FFS terminated Patton from his employment, and FIA filed a Form U–5 with the NASD, listing the reason for termination as "violation of non-compete agreement" and "violation of employment agreement." Appellee's App. at 15. The NASD inquired about Patton's termination, and FIA's succeeding president responded that Patton had been terminated for violation of his non-compete and employment agreements with FIA's parent company. FIA later amended its Form U–5 ("Amended Form U–5"), stating the reason for Patton's termination as follows:

> An ongoing review of client accounts found over 20 client accounts that appear to indicate Mr. Patton was selling away in violation of firm policy and specific direction, solicited the sale of mutual funds to purchase another mutual fund without obtaining a mutual fund switch letter, switched clients by selling diversified portfolios of securities and

---

1. In 2007, the NASD and the enforcement arm of the New York Stock Exchange, NYSE Regulation, Inc., merged to form the Financial Industry Regulatory Authority (FINRA).

mutual funds and purchased for clients one mutual fund that Mr. Patton had a financial interest [sic]. Reviewing possible violations of NASD Rules: 3040, 2310, 2830, 2110, firm policy.

Appellee's App. at 19.

On April 11, 2006, Patton filed a Statement of Claim with the NASD, naming FIA, FFS, and FFS' parent corporation as respondents. The NASD advised Patton that FFS and FFS parent company were non-member respondents. As a result, Patton filed an Amended Statement of Claim, in which he named only FIA as a respondent. In the Amended Statement of Claim, Patton made claims for unpaid vacation pay (count 1), unreimbursed business expenses (count 2), unreimbursed startup costs (count 4), retaliatory discharge from FIA (count 3), defamation arising out of the Amended Form U–5 filed by FIA (count 5), and violation of Indiana's Blacklisting Statute (count 6). FIA filed its answer and defenses to Patton's Amended Statement of Claim. FIA also filed its own Statement of Claim, requesting damages arising from Patton's violation of the terms of his non-competition agreement with FFS, tortious interference with the business relationship between FIA and its clients, and breach of his fiduciary duty to act in FIA's best interest.

The NASD arbitration panel conducted an evidentiary hearing on Patton's and FIA's respective Statements of Claim on January 29–31, 2007. FIA argued, in part, that the NASD lacked jurisdiction over Patton's requests for reimbursable expenses because the named benefits obligations were solely the responsibility of FFS, which was not an NASD member and, therefore, was not obligated to NASD arbitration. Also at the hearing, Patton's

attorney submitted an attorney's fee affidavit. On February 28, 2007, the arbitration panel issued a decision awarding Patton $555,040 in compensatory damages, with interest; $555,040 as punitive damages; and $150,000 for attorney's fees. On the counterclaim, the panel awarded FIA $75,000 in compensatory damages. The panel also ordered FIA to expunge termination comments on Patton's Form U–5 and directed FIA to state, instead: "Terminated for refusing to sign the quarterly focus as FINOP, had no knowledge of the accuracy or the source of the information provided; was not guilty of any violation of a non-compete or employment agreement; and also terminated because he filed suit against the firm just prior to termination." Appellant's App. at 94.

On March 29, FIA filed a motion to vacate the arbitration award, and on May 23, Patton filed a motion to confirm the award. The trial court held an evidentiary hearing on January 25, 2008, and the parties filed pre-hearing and post-hearing briefs. On May 16, the court issued its findings of fact, conclusions thereon, and order confirming the arbitration panel's decision. The court's order states, in relevant part:

5. . . . Patton entered into an Employment Contract with FFS. Patton was assigned the title "Director, Financial Services" and was to perform his services at FFS's Indianapolis Branch office. . . .

6. Patton's employment contract with [FFS] required that he direct and manage the operations of the Company [2] . . . .

\* \* \*

8. Patton's duties also required him to serve as the President and Financial

2. The trial court's order does not define "Company."

Operations Principal for FFS' new subsidiary, FIA.

\* \* \*

10. FIA is a securities broker-dealer who is registered with and regulated by the U.S. Securities and Exchange Commission pursuant to 15 U.S.C. sec. 78*o* (2002).

11. FIA is a member firm of the National Association of Securities Dealers, Inc. (NASD). NASD is a securities self-regulatory organization.

12. At all times pertinent to this proceeding, Patton was either a member or a person associated with a member of the NASD.

13. FIA considered Patton its employee for purposes of the NASD rules and regulations.

14. FIA paid Patton commissions on work performed during the course of his employment that generated commissions.

\* \* \*

16. On October 6, 2005, Patton and others filed an action [in] the United States District Court for the Southern District of Indiana, Indianapolis Division, Case No. 1:05–CV–1481 wherein Patton asserted various claims against [FFS] and others arising from the sale of the Frontier assets and stock. FIA was not a party to the Federal court action.

17. On or about January 5, 2006, [FFS] terminated Patton's employment.

18. When [FFS] terminated Patton's employment, Patton's duties with FIA were also terminated.

19. On January 9, 2006[,] FIA filed a U–5 TERMINATION OF EMPLOYMENT NOTICE FOR SECURITIES INDUSTRY REGISTRATION regarding Patton.

20. Patton filed a Statement of Claim with the NASD on April 11, 2006 claiming: FIA wrongfully terminated him, and that he was owed recompense from Respondents FIA and [FFS].

21. The NASD ordered Patton to refile his claim noting that [FFS] was not an NASD member and not subject to its jurisdiction.

22. Patton [refiled] his Statement of Claim naming only FIA as a respondent[.] FIA denied Patton's allegations.

\* \* \*

24. On or about January 29–31, 2007, FIA and Patton arbitrated their disputes before the NASD arbitration panel in Indianapolis.

25. Patton claimed in the arbitration proceeding that he was wrongfully terminated from employment because of his refusal to participate in illegal and unethical conduct of FIA; that he was owed wages in the form of commissions, unpaid vacation pay, and employment related expenses; and that FIA made false and defamatory statements on Patton's U–5 Form. Patton requested damages and punitive damages of an unspecified amount.

26. FIA generally denied Patton's claims and asserted as an affirmative defense that NASD lacked jurisdiction over the matters pertaining to reimbursable expenses because employment obligations are the responsibility of FFS and FFS is not an NASD member. FIA also asserted the statements in their U–5 filing are true and that Patton's conduct precluded recovery against FIA.

27. FIA counterclaimed raising Patton's tortious interference and violation of non-competition agreements and re-

quested damages in the amount of $240,000.00.

\* \* \*

29. Counsel for Patton, Donald G. Orzeske, (Orzeske) submitted evidence of both the hourly rate and amount of time expended in pursuing Patton's case to the NASD arbitration proceeding. Orzeske's time included defending Patton against FIA's counterclaims.

30. The Arbitration Panel rendered [its] decision on February 27, 2007.

31. FIA timely filed a Motion to Vacate Arbitration Award consolidating its argument into two issues, (1.) Whether the NASD Arbitration Panel exceeded its power when it entered an award against FIA on the claims of Patton, and (2.) Whether there was fraud committed on the NASD Arbitration Panel by Patton's request for an award of attorney's fees.

\* \* \*

Based on the foregoing Findings of Fact, the Court makes the following Conclusions of Law. Any Finding of Fact which also constitutes a Conclusion of Law is deemed to be incorporated into these Conclusions of Law.

\* \* \*

8. The Securities Exchange Act (15 U.S.C.A. sec. 78o (2006)) requires securities broker-dealers and persons associated with them to register with the Securities and Exchange Commission (hereinafter SEC),

9. The NASD is a securities self[-]regulatory organization overseen by the SEC.

10. NASD rules require persons associated with a member firm who will be engaged in that firm's securities or investment business to be registered with the NASD. This registration is usually accomplished with the filing of a U–4 form. The form U–5 is generally used to terminate associations between individuals and firms.

11. The NASD requires member firms and their associated persons to adhere to applicable NASD rules and federal securities laws and regulations as a foundation of ensuring investor protection and market security. NASD also has a dispute resolution system to, "promote self-discipline among members, and to investigate and adjust grievances between the public and members and between members."

12. As a registered member of the NASD and a person associated with a member, respectively, FIA and Patton agreed to submit to the arbitration authority of the NASD.

13. NASD Rule 10201 provides,

A dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with activities of such association person(s), or arising out of the employment of such associated person(s) with such member, shall be arbitrated under this Code, at the insistence of:

\* \* \*

(2) a member against a person associated with a member or a person associated with a member against a member. . . .

14. Therefore, as NASD members Patton and FIA were obligated to submit to arbitration disputes arising from the business, activities, employment or termination of employment of a member

and an associated person at the insistence of either party.

15. FIA contends the Arbitration Panel exceeded its authority because Patton's substantive claims necessarily relate solely to the employment contract between FFS and Patton.

16. The facts reveal, however, that Patton's claims stemmed from the performance of investment and securities duties associated with his work at FIA. FIA's U–5 filing states Patton was terminated for violating investment[-] related statutes, specifically, NASD rules 3040, 2310, 2830, and 2110.

17. Patton was President of FIA. FIA was a securities broker-dealer. His work required him to be engaged in the investment banking or securities business of FIA and to be registered with NASD as a person associated with a member. As President of FIA and Director of Financial Services, Patton was not only a sales representative for FIA; he was actively engaged in the management of the business. As such, NASD rules require that Patton be registered as Principal of the firm.

18. FIA considered Patton its employee for purposes of NASD rules and regulations.

19. The overall extent and nature of the relationship between FIA and Patton is sufficient to support NASD's exercise of its power over this dispute arising in connection with the business of FIA. Accordingly, NASD Rule 10201 provides a statutory basis for NASD's award in this case.

20. Our Court of Appeals has also held that in disputes between NASD members, if resolution of the claim depends upon evaluation of a party's performance either as a broker or as an employer of brokers, the dispute is subject to arbitration under Rule 10201.

21. Arbitration requirements and the awards attendant to them arise from the parties['] NASD membership and not from their employment relationship. *Bielfeldt v. Nims,* 805 N.E.2d 415 (Ind. Ct.App.2004)[,] trans. denied. They are totally separate relationships. *Id.*[ ] (citing *Zan[d]ford v. Prudential–Bache Sec., Inc.,* 1123 [112] F.3d 723 (4th Cir. 1997)).

22. FIA has not met its burden of proving the Arbitration Panel exceeded its powers under NASD Rules.

23. FIA's second argument in support of its motion to vacate the arbitration award is there was fraud committed on the NASD Arbitration Panel by Patton's request for an award of attorney fees. FIA's argument is two-pronged: first, the overall attorney fee award of $150,000 is unreasonable and second, the award is not supported by the evidence.

\* \* \*

25. FIA contends Patton's attorney fee award was "procured by corruption or fraud[.]" The elements of actual fraud are: (1) a material misrepresentation of a past or existing fact that (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complaint of.[ ]

26. The NASD provides for the award of attorney fees. "The arbitrator(s) shall have the authority to provide for reasonable attorney's fee reimbursement, in whole or in part, as part of the remedy in accordance with applicable law."

27. Patton's attorney submitted an affidavit verifying the reasonableness of his fee, costs, and the number of hours

spent on the arbitration case totaling $111,580.74. Further, Patton's attorney submitted evidence at the arbitration hearing on the issue of attorney fees informing the Panel, his submitted fee did not include time spent both prosecuting and defending Patton's claims in the arbitration proceeding. The Arbitration panel had ample opportunity to consider the facts and issues regarding attorney fees. . . .

28. While Patton's attorney fee affidavit and accompanying evidence may not have been as detailed as FIA would prefer, we cannot say the Arbitration Panel's award of attorney fees is fraudulent. FIA did not meet the burden of proving the Arbitration Panel award of attorney fees was procured by corruption or fraud. We [sic] confirm the award of the Arbitration Panel.

\* \* \*

### JUDGMENT OF THE COURT

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the court that:**

1. The award of the Arbitration Panel is, in all things, confirmed. . . . Appellant's App. at 7–19 (most citations omitted). FIA now appeals.

### DISCUSSION AND DECISION

#### Standard of Review

FIA challenges the trial court's confirmation of the arbitration award under the Uniform Arbitration Act, Indiana Code Sections 34–57–2–1 through –22. Judicial review of arbitration awards is very narrow in scope. *Citizens Gas & Coke Util. v. Local Union No. 1400, IBEW*, 874 N.E.2d 391, 397 (Ind.Ct.App.2007). "An award should only be set aside when one of the grounds specified by the Uniform Arbitration Act for vacation of an award is

shown." *Id.* A party who seeks to vacate an arbitration award under the Uniform Arbitration Act bears the burden of proving the grounds to set aside the award. *Id.* The role of an appellate court in reviewing an arbitration award is limited to determining whether the defendant has established any of the grounds for challenge permitted by the Uniform Arbitration Act. *Id.*

"The Uniform Arbitration Act does not declare which issues are subject to arbitration." *Marion Cmty. Sch. Corp. v. Marion Teachers Ass'n*, 873 N.E.2d 605, 608 (Ind.Ct.App.2007) (citation omitted). "Rather, arbitration arises through contract, and the parties are essentially free to define for themselves what questions may be arbitrated, remedies the arbitrator may afford, and the extent to which a decision must conform to the general principles of law." *Id.* at 608–09 (citation omitted). Consequently, "an arbitrator is limited by the bounds of the agreement from which he draws his authority and an arbitrator is expected to be aware of those limits." *Id.* (citation omitted).

> When an award is attacked under the Uniform Arbitration Act on the grounds that the arbitrator[ ] exceeded [its] powers through erroneous interpretation of a contract, the reviewing court determines whether the arbitrator['s] construction of the contract "is a reasonably possible one that can seriously be made in the context in which the contract was made."

*Id.* (alterations in original, internal citation omitted). An arbitrator's mistake of law or erroneous interpretation of the law does not constitute an act in excess of the arbitrator's powers. *Sw. Parke Educ. Ass'n v. Sw. Parke Cmty. Sch. Trs. Corp.*, 427 N.E.2d 1140, 1147 (Ind.Ct.App.1981).

Because FIA has the burden of proving the grounds to set aside the award, FIA is appealing from a negative judgment. As such, the trial court's judgment confirming the arbitration award will be reversed only if there is no evidence to support the trial court's conclusion. *Adams v. Adams,* 873 N.E.2d 1094, 1098 (Ind.Ct.App.2007).

### Issue One: NASD Jurisdiction Over Claims

FIA seeks reversal of the trial court's confirmation of an arbitration award of unpaid vacation pay and unreimbursed business expenses under Indiana Code Section 34–57–2–13(a)(3) of the Uniform Arbitration Act. That statute provides, in relevant part: "Upon application of a party, the court shall vacate an award where . . . the arbitrators exceeded their powers and the award can not be corrected without affecting the merits of the decision upon the controversy submitted. . . ." FIA argues that Patton's claims for unpaid vacation pay and unreimbursed business expenses arose from Patton's employment with FFS, which was not subject to NASD jurisdiction because FFS was not a member of the NASD. FIA further contends that the award cannot be corrected without affecting the merits of the decision because the arbitration panel did not specify the amount of damages awarded for each of Patton's claims. Therefore, FIA alleges the trial court should not have confirmed the award. We cannot agree.

Patton and FIA arbitrated their respective claims before an NASD arbitration panel pursuant to NASD Code of Arbitration Procedure Rule 1020, which provides:

(a) Except as provided in paragraph (b) or Rule 10216, a dispute, claim, or controversy eligible for submission under Rule 10100 Series between or among members and/or associated person, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of:

(1) a member against another member;

(2) a member against a person associated with a member or a person associated with a member against a member; and

(3) a person associated with a member against a person associated with a member.

FIA argues that the arbitration panel did not have jurisdiction over Patton's claims regarding unpaid vacation pay and unreimbursed business expenses because FFS, not FIA, was responsible for making such payments to Patton. Thus, because FFS was not an NASD member, the arbitration panel exceeded its authority when it decided those claims.

The "NASD arbitration provisions are 'very broad' and encompass claims arising in connection with the business of a member or the activities of an associated person . . . or arising out of the employment or termination of employment of an associated person." *Bielfeldt v. Nims,* 805 N.E.2d 415, 420 (Ind.Ct.App. 2004) (internal citation omitted), *trans. denied.* "[T]he specific source from which a controversy must arise is not the employment contract; it is simply employment or termination of employment." *Id.* In this regard, we look to " 'whether resolution of the claim depends upon evaluation of a party's performance either as a broker or as an employee of brokers during the time of the contractual relationship.' " *Id.* (citation omitted).

FIA contends that Patton's dispute over vacation pay and business expenses was with FFS, not FIA, and that his employment with FIA was "merely ancillary to his employment by and through FFS." Appellant's Brief at 22. But FIA does not and cannot deny that it employed Patton. Under Patton's employment agreement with FFS, he served as Director of Financial Services for FFS and executed a non-compete agreement. But his duties for FFS also included being president of FIA. Patton was a person "associated with" FIA as defined by NASD rules and FIA's Financial Principal, a broker-dealer position of authority. And FIA listed on the Form U–5 and the Amended Form U–5 that Patton had been terminated for his conduct and performance as an associated person with FIA. Thus, the undisputed evidence shows that Patton was an employee of FIA.

The evidence also supports the trial court's finding that, although Patton's employment agreement was with FFS, the termination of his employment arose at least in part from Patton's performance as an employee of FIA. Again, FIA listed in the Form U–5 that Patton had been terminated from FIA for "violation of non-compete agreement" and "violation of employment agreement." Appellees App. at 15. As FIA repeatedly points out, Patton's non-competition agreement was with FFS, not FIA. Therefore, FIA attributed Patton's termination in part to his performance for FFS.

Moreover, FIA made claims on behalf of FFS before the arbitration panel. In its own Statement of Claim, FIA alleged that Patton had "violat[ed] the express terms of his Noncompetition Agreement with FFS" and that "[b]oth FFS and FIA [had] been damaged as a result of Patton's conduct and such damages total[ed] in excess of $240,000.00." Appellant's App. at 160.

Thus, FIA both sought affirmative relief on its behalf and on behalf of FFS and argued that the arbitration panel was without authority to hear Patton's claims for employment benefits that arose under his employment agreement with FFS. The arbitration panel clearly rejected FIA's argument that the panel lacked authority to decide those issues. Likewise, the trial court also rejected FIA's argument in that regard, finding specifically that FIA had not met its burden to show that the "Arbitration Panel had exceeded its powers under NASD Rules." Appellant's App. at 17. The evidence supports that finding by the trial court.

Finally, FIA cites to the federal circuit court decision in *Eljer Manufacturing, Inc. v. Kowin Development Corp.*, 14 F.3d 1250 (7th Cir.1994), *cert. denied*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994), in support of its argument that the arbitration panel lacked authority to hear Patton's unpaid benefits claims. There, Kowin entered into a joint venture with the Simonds Division and a Chinese company. To further the joint venture, Kowin arranged the financing for the purchase of equipment. Part of that financing was with the Bank of China and was guaranteed by Kowin and by Simonds' parent company, Eljer. When the joint venture failed, Eljer and Kowin each had to pay on the guaranty. Kowin then sued Simonds and Eljer, but the parties submitted to arbitration under the Federal Arbitration Act pursuant to the terms of the joint venture agreement.

The arbitrators awarded Kowin, in part, a sum representing a payment that had been made from the Bank of China to Eljer for the purchase of equipment from Simonds. Eljer argued, and the circuit court agreed, that the arbitrator had exceeded his powers. *Id.* at 1257. Eljer's retention of the payment from the Bank of

China may indeed have constituted unjust enrichment. But the arbitration clause in the joint venture agreement did not authorize the arbitrator to arbitrate disputes between Eljer and a third party, namely, the Bank of China. *Id.* Because the arbitrator had exceeded the scope of his authority, the trial court vacated that part of the arbitration award. *Id.*

FIA's reliance on *Eljer* is misplaced. In *Eljer* the court vacated a portion of an arbitration award because that portion was based on damage suffered by an entity that was not party to the arbitration agreement. FIA argues that the present case is similar because its parent company, FFS, is not a member of the NASD and is not a party to the agreement to arbitrate under NASD rules. But Patton was an employee of both FFS and FIA. And although FFS was not an NASD member and therefore not obligated to submit to NASD arbitration, FIA made claims on behalf of FFS in the arbitration proceedings.

The present case is more akin to the facts in *Citizens Gas & Coke Utility v. Local Union No. 1400, IBEW,* 874 N.E.2d 391 (Ind.Ct.App.2007). There, an employer and the union submitted to arbitration a former employee's grievance arising from his termination shortly before his death. The arbitrator determined that the employer did not have just cause for the termination and that the employee's widow was entitled to back pay and benefits, including life insurance proceeds. Citing *Eljer,* the employer argued that its arbitration agreement with the union could not be "construed so broadly as to delegate to the arbitrator the power to arbitrate disputes between the Union or [the widow] and a third party, such as [the life insurance company.]" *Id.* at 398. But this court rejected the employer's argu-

ment. The court observed that the dispute was between the union and the employer and, significantly, that the life insurance proceeds were "not completely separate from the [collective bargaining agreement] because [that agreement] specifically provided for life insurance as a fringe benefit...." *Id.* at 399. Moreover, the arbitrator did not order the insurance company to pay the proceeds but, instead, merely determined that, but for the unjust termination, the former employee would have qualified for life insurance. *Id.*

Similarly, here, Patton's employment with FFS was not completely separate from his employment with FIA. As part of his duties for FFS, he served as president of FIA. He was also registered with the NASD as an associated person and financial operations principal of FIA. FIA has not shown that Patton was not entitled to vacation benefits or reimbursement of business expenses through FIA, but contends only that he was contractually entitled to such benefits from FFS. FIA has not demonstrated that the arbitration panel exceeded its authority by making FIA liable for damages owed by a completely unrelated third party.

Ample evidence in the record shows that the arbitration panel had authority to decide Patton's claims for unpaid vacation pay and unreimbursed business expenses. Patton was indisputably an employee of FIA. On the Form U–5 and Amended Form U–5, FIA stated that Patton had been terminated because of conduct arising from his employment with both FFS and FIA. Moreover, FIA itself made claims and requested damages in the arbitration on behalf of FFS, a non-member of the NASD. We conclude that the evidence in the record supports the trial court's order confirming the arbitration award as

to Patton's claims for unpaid vacation pay and unreimbursed business expenses.

### Issue Two: Attorney's Fee Award

FIA next contends that the confirmation of the attorney's fee portion of the arbitration award should be reversed because the fee award was procured by fraud. *See* Ind.Code § 34–57–2–13(a)(1). But FIA neither set out the elements of fraud nor explained how Patton procured the fee award by fraud. FIA has not supported its contention with cogent reasoning. *See* Ind. Appellate Rule 46(A)(8)(a). The argument is waived.

Additionally, FIA's argument centers around the reasonableness of the fee award. The reasonableness of an award of attorney's fees is a question of fact to be determined under the circumstances of a given case. *Leibowitz v. Moore,* 436 N.E.2d 899, 900 (Ind.Ct.App.1982). But a factual question determined in arbitration cannot be relitigated. *See Bopp v. Brames,* 677 N.E.2d 629, 634 (Ind.Ct.App. 1997) ("Once a factual question is determined in arbitration, it is finally adjudicated and cannot be relitigated."). Moreover, the Uniform Arbitration Act defines the narrow scope of review of arbitration awards, and that scope does not include review of the reasonableness of an award. *See* Ind.Code § 34–57–2–13(a).

Affirmed.

BAKER, C.J., and KIRSCH, J., concur.